UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REGINALD HARRIS, | CASE NO.: C08-0903-RSL |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| TIMOTHY WENGLER, | |
| Respondent. | |

Petitioner Reginald Harris proceeds *pro se* in this 28 U.S.C. § 2254 habeas action. In 2004, a jury convicted him of five counts of second-degree assault, one count of first-degree kidnapping, and one count of intimidating a witness. (Dkt. 14, Ex. 1 at 1.) The Court has considered the entire record, including all hearing transcripts. For the reasons discussed below, the Court recommends that Harris's habeas petition be denied and that this action be dismissed.

**I. BACKGROUND**

The Washington Court of Appeals described the facts as follows:

Reginald Harris and Aubre Jones began an intimate relationship in June 2003. Jones lived in Kendall with her two children. Harris began staying at Jones' home in October 2003.

Late at night on December 25, 2003, Harris and Jones argued, and Harris grabbed Jones by the neck, choked her, and slammed her into a wall. He stopped when Jones' daughter entered the room. On New Year's Eve, Harris and Jones went out for the evening. They had an argument during the return trip. Upon arriving home, Harris pushed Jones, who locked herself in the bathroom. Harris pounded on the door hard enough to make holes in the door. Jones opened the door, and Harris slammed it so hard the mirror on the back of the door shattered. Harris threw Jones in the bathtub onto the broken glass, and choked her. He then dragged her to the couch and choked her. Then he dragged her into the bedroom and choked her on the bed.

At that point, Harris took his gun from under the pillow, chambered a round, and put the gun against Jones' cheek, telling her how easy it would be to kill her and bury her in the back yard where nobody would find her. Later, Harris took Jones' clothes off and had sex with her while she was crying.

Harris eventually fell asleep. Jones took the gun and pointed it at him, but decided not to shoot him after thinking about her children. Harris woke up and asked what she was doing, and she told him she was moving the gun so she could sleep. Harris kept Jones in the bedroom until 5 or 6 in the morning on New Year's Day.

After a further incident a few days later, when Harris choked her again after finding her calling a friend on the telephone, Jones left and stayed with friends. She returned when Harris promised to stop drinking and take an anger management course.

On January 17, Harris and Jones attended a concert in Seattle. They returned to Bellingham in the back seat of a car driven by a friend. On the journey, Harris punched Jones in the face, breaking her nose and causing it to bleed profusely. When Jones did not stop screaming, Harris put her head in his lap and punched her in the back of the head with his fists and his gun. He also pointed the gun at her and told her he would kill her. When they arrived home, Jones got out of the car and tried to run away, but Harris caught her and dragged her into the house, where he kicked and punched her until she lost consciousness.

When she woke up, Jones persuaded Harris to let her go to the hospital by promising to lie about the cause of her injuries. She drove herself to a hospital in Skagit County because she was afraid the hospital in Bellingham would call the police. She told the doctor that she had been trampled in a fight at the Seattle concert. She had two black eyes, a broken nose and head contusions.

On January 26, Harris threatened to punch Jones' daughter, and Jones decided to end the relationship. She left the house. She returned two days later and told Harris to leave her house or she was going to call the police. Harris said he wasn't going anywhere and that he was going to take over her lease. When Jones told him he could

> not take over the lease and that she would call the police, Harris said, "I know who I had to call and what I had to do." Report of Proceedings (RP) (Nov. 1, 2004) at 623. Jones thought Harris was threatening to have someone come and beat her up. She asked if he was threatening her, and Harris replied, "Take it how you want to." *Id.*
>
> Jones went to a nearby gas station and called police. While officers were taking her statement, Harris arrived and was arrested. He consented to a search of his car and his gun was found in the trunk.

(*Id.*, Ex. 7 at 1-3.)

Harris faced trial twice for a series of violent acts against Jones. In June 2004, a jury convicted him of two counts of fourth-degree assault but deadlocked on the remaining counts. (Dkt. 14, Ex. 2); *see State v. Harris*, No. 54565-5-I, 2005 WL 1729732, at *1 (Wash. Ct. App. July 25, 2005). At his second trial in October 2004, the jury convicted him of seven counts and acquitted him of two. [1] (Dkt. 14, Ex. 1 at 1, 3.) Harris was sentenced, including firearm enhancements, to 240 months of confinement to run concurrently with the 365 days he had received at his first trial. (*Id.*, Ex. 1 at 5.) Harris's present habeas petition challenges only the convictions and sentences from the second trial.

With assistance of counsel, Harris filed a direct appeal of the second jury trial's verdict. (*Id.*, Ex. 3 at 1-2; *id.*, Ex. 4 at 1-2.) The Washington Court of Appeals affirmed Harris's conviction and sentence. (*Id.*, Ex. 7 at 13.) Harris's counsel then filed a petition for review, which the Washington Supreme Court denied. (*Id.*, Ex. 8; *id.*, Ex. 10.) The Court of Appeals issued its mandate on July 11, 2007. (*Id.*, Ex. 11.) Acting *pro se*, Harris then filed a motion to

---

[1] Harris was convicted of three counts of second-degree assault (Count I, II, and V), two counts of second-degree assault with a deadly weapon (Counts IV and VI), one count of first-degree kidnapping (Count VII), and one count of intimidating a witness (Count XII). (*Id.*, Ex. 1 at 1.)

vacate the judgment and sentence, which was treated as a personal restraint petition ("PRP"). (*Id.*, Exs. 12-14.) The Court of Appeals dismissed the PRP on the merits, *id.*, Ex. 14), and Harris did not seek discretionary review of that decision. The Court of Appeals issued its certificate of finality for the PRP on November 28, 2007. (*Id.*, Ex. 15.)

Harris completed his *pro se* habeas petition in May 2008. (Dkt. 6 at 14 (Petition 15).) He raises four grounds for habeas relief:

1. The State presented insufficient evidence to prove beyond a reasonable doubt petition[er] committed first degree kidnapping in violates [sic] his Fourteenth Amendment of the United States Constitutional Due Process Clause in the federal law . . . .

2. The State presented insufficient evidence to prove beyond a reasonable doubt petition[er] intimidated a witness in violated [sic] Fifth Amendment and Fourteenth Amendment of the United States Constitutional Due Process Clause, in federal law . . . .

3. Petition[er]'s three convictions for second degree assault from the January [17]th incident were the same criminal conduct for purposes of determining his offense score was violation [sic] his fundamental principle of due process of state and federal constitutionally [sic] . . . .

4. Introduce [sic] evidence tending to demonstrate he was not physically present at the time of the crime was committed on December 25, 2003, thus, he was denied his right to present a defense, fair trial and Due Process Clause under the U.S[.] Constitution['s] Fifth, Sixth and Fourteenth Amendments.

(*Id.* at 17 (Memorandum at i) (capitalization altered).) Harris presented these four arguments as federal constitutional claims on direct appeal to the Washington Court of Appeals and in his petition for review before the Washington Supreme Court. (Dkt. 14, Ex. 3 at 12-40; *id.*, Ex. 4 at 5-9; *id.*, Ex. 8 at 4-14.) He has therefore exhausted state remedies and this Court may examine the merits of his habeas claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that to exhaust state remedies, a petitioner must present each of his claims to the state's highest

court); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (holding that a petitioner must "alert the state courts to the fact that he was asserting a claim under the United States Constitution") (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).

## II. ANALYSIS

To obtain a writ of habeas corpus, a Section 2254 petitioner like Harris must demonstrate that he is in custody in violation of federal law and that the highest state court decision rejecting his grounds was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(a) and (d)(1). United States Supreme Court holdings at the time of the state court decision provide the "definitive source of clearly established federal law." *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003). A state-court decision is contrary to clearly established precedent if it "'applies a rule that contradicts the governing law set forth in'" a Supreme Court decision, or "'confronts a set of facts that are materially indistinguishable'" from such a decision and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Three of Harris's claims (Grounds 1, 2, and 4) are essentially contentions that there was insufficient evidence to convict him of first-degree kidnapping, intimidation of a witness, and second-degree assault. His remaining claim (Ground 3) is that the trial court improperly determined his offender score for sentencing purposes. None of these arguments suggest that Harris's confinement violates federal law and that the Washington Court of Appeals's rejection of his claims was either contrary to, or involved an unreasonable application of, clearly established

REPORT AND RECOMMENDATION
PAGE -5

federal law.

## A.     Ground One: First-Degree Kidnapping

In his first ground for relief, Harris contends that the State violated his right to due process because it presented insufficient evidence to prove beyond a reasonable doubt that he committed first-degree kidnapping. The Washington Court of Appeals examined this contention at length:

> *Sufficiency of the Evidence: Kidnapping.*  For the New Year's Day incidents, Harris was convicted of first degree kidnapping and second degree assault with a deadly weapon. He argues that except for the restraint incidental to the assault with the gun, which was separately charged and punished, there was insufficient evidence that he restrained Jones' movements as required for kidnapping.
>
> Whether restraint is merely incidental to another crime or is sufficient to support kidnapping as a separate offense is a fact-specific determination based on the totality of the circumstances. *State v. Green*, 94 Wn.2d 216, 226-27, 616 P.2d 628 (1980). Evidence has been found sufficient to support a separate conviction for kidnapping where a rape victim was handcuffed, shackled and had her mouth taped shut, which constituted restraint above and beyond that required or typical for rape. *State v. Saunders*, 120 Wn.App. 800, 818, 86 P.3d 232 (2004).
>
> A person is guilty of kidnapping in the first degree when he or she "intentionally abducts another person with intent: .... (b) To facilitate the commission of any felony [assault in the second degree] or flight thereafter; or (c) To inflict bodily injury on the him; or (d) To inflict extreme mental distress on him or a third person." RCW 9A.40.020. A person is abducted when he or she is restrained by the use or threat of use of deadly force. RCW 9A.40.010(2). A person is restrained where his or her movements are restricted "without consent and without legal authority, in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(1).
>
> Harris contends his restraint of Jones was merely incidental to the assault. He relies upon *State v. Green*, 94 Wn.2d 216, 616 P .2d 628 (1980), [FN1. The State argues that after *State v. Calle*, 125 Wn.2d 769, 888 P.2d 155 (1995), *Green* is no longer viable precedent, because the "merely incidental" analysis should be used only for double jeopardy questions. Although   *Calle* held that there "are no non-double jeopardy reasons for reviewing multiple punishments," it did not repudiate *Green* or its sufficiency of the evidence test for crimes used as aggravating factors. *Id.* at 775.] in which the defendant stabbed a young girl on a sidewalk adjacent to her apartment complex. Several residents saw Green pick her up and drag her 20 to 50 feet around a corner to an exterior loading area. She was found on the lawn in the back of the

complex. He was convicted of aggravated first degree murder with first degree kidnapping as an aggravating factor. Our Supreme Court held that Green's movement and restraint of the victim were "actually an integral part of and not independent of the underlying homicide" and were "not, standing alone, indicia of a true kidnapping." *Id.* at 227.

This case is not similar to *Green*. Harris was charged with assault with a firearm, which necessarily did not occur until he retrieved the gun from under the pillow in the bedroom. His restraint of Jones, however, began when he choked her and dragged her through the house to the place where he had the gun, obviously intending to commit the assault. This is kidnapping in the first degree. Harris continued to restrain Jones after the assault by keeping her in the bedroom where he had the gun handy, for the purpose of causing her emotional distress. This too is kidnapping in the first degree. Harris' acts in choking and dragging Jones, and in keeping her in the bedroom, went far beyond the restraint necessary for the assault, and were not merely incidental to the assault with the gun.

Harris claims the State made an election by arguing that the pointing of the gun was the restraint present in the kidnapping. This description of the State's argument is not borne out by the record. The prosecutor stated in closing argument:

> [The] State has to prove . . . the defendant intentionally abducted another person, intentionally restrained another person, intentionally restrained Aubre Jones, that the defendant restrained that person with intent to facilitate the commission of assault in the second degree, which he did, he pointed the gun at her and told her I could bury you out in the back yard.

RP (Nov. 2, 2004) at 737. This statement cannot be characterized as an election to rely on any particular act of restraint. Rather, the statement emphasizes that Harris restrained Jones with intent to commit assault and did in fact commit assault.

We agree that the restraint accomplished by pointing a gun at Jones was integral to the assault with a deadly weapon and would not support an independent charge of kidnapping. But the trier of fact could certainly find that Harris restrained Jones beforehand with intent to commit the assault, and restrained her afterward with intent to inflict emotional distress. The evidence amply supported the kidnapping conviction.

(Dkt. 14, Ex. 7 at 4-6 (text from footnote bracketed).)

To succeed Harris must show that the evidence against him was so insufficient as to offend the Due Process Clause of the Fourteenth Amendment. *See Jackson v. Virginia*, 443 U.S. 307,

315 (1979). He "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. "But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19 (citation and quotation marks omitted). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

As demonstrated by the Court of Appeals, a rational jury could have found Harris guilty of first-degree kidnapping based on the evidence adduced at trial. Both Jones and Harris testified. According to Jones, Harris threw her down on mirror shards, repeatedly choked her, put a loaded gun to her cheek, told her that he could kill her and bury her in the backyard where no one would find her, had sex with her while she wept, and kept her in a state of fear overnight in the bedroom. (Dkt. 14, Ex. 19 (Tr. 123-31).) This account was consistent with Jones's testimony that Harris had repeatedly attacked her over the course of a month. In contrast, Harris testified that he never assaulted or restrained Jones on the dates in question (*Id.*, Ex. 22 (Tr. 625)), just as he had never been the source of any of Jones's medically substantiated injuries, which included black eyes and a broken nose. According to Harris, Jones had punched the holes in the bathroom door and

broken the mirror because her daughter was crying.[2] (*Id.* (Tr. 601-02).) Jones's and Harris's accounts of what occurred on New Year's Eve and New Year's Day differ so markedly that a rational jury was entitled to believe Jones and disbelieve Harris. Harris's first ground for relief therefore lacks merit and should be denied.

**B.     Ground Two: Intimidating a Witness**

In his second ground for relief, Harris argues that the State violated his right to due process because it presented insufficient evidence to prove beyond a reasonable doubt that he intimidated a witness. The Washington Court of Appeals also discussed this claim at length:

> *Sufficiency of the Evidence: Intimidating a Witness.* A person intimidates a witness if, by use of a threat against a current or prospective witness, the person attempts to induce the witness not to report or not to give truthful or complete information relevant to a criminal investigation. RCW 9A.72.110(1)(d). Harris contends there was insufficient evidence that his statements were intended to prevent Jones from reporting his acts of domestic violence.
>
> Harris admits that when Jones threatened to call the police, he said, "I know who I had to call and what I had to do." RP (Nov. 1, 2004) at 623. He also admits that when she asked if he was threatening her, he said, "Take it how you want to." *Id.* He contends, however, that these statements cannot be considered threats.
>
> In considering charges of intimidating a witness, jurors must ascertain the inferential meaning of statements alleged to be threats, because the literal meaning of words is not necessarily the intended communication. *State v. Gill*, 103 Wn.App. 435, 445, 13 P.3d 646 (2000) (quoting *State v. Scherck*, 9 Wn.App. 792, 794, 514 P.2d 1393 (1973)). Jones testified that Harris had previously threatened to have her beaten up by "Keysha," a person who had once assaulted her. A rational juror could conclude that Harris' statements implied an intentional threat, which conclusion is ample support for the verdict.
>
> Harris next contends that Jones' threat to call police was limited to her effort to evict

---

[2] The deputy sheriff who investigated Jones's report of domestic violence opined that Jones's hands could not have created such large, deep gauges in the door. (Dkt. 14, Ex. 23 (Tr. 705).

him from her home, and that she never threatened to report his violence. He argues that where the victim never threatens to go to the police, a conviction for intimidating a witness violates the constitutional vagueness doctrine by punishing conduct an ordinary person would not know is proscribed and by providing no ascertainable standards of guilt. This argument rests upon a crabbed and unfounded reading of the statute, and amounts to the theory that a victim must actually threaten to report the crime before efforts to discourage reporting can constitute a crime. Nothing in the statute or the realm of common sense supports such a reading. The statute plainly prohibits the use of threats against a person the actor believes may have information relevant to a criminal investigation. It is irrelevant whether a police report is actually planned or made, or whether an investigation results or charges follow. A vagueness challenge is unavailable where, as here, a defendant's conduct falls squarely within that proscribed by the statute. *State v. Lee*, 135 Wn.2d 369, 393, 957 P.2d 741 (1998).

(Dkt. 14, Ex. 7 at 6-8.)

A rational jury could have found Harris guilty of intimidating a witness based on the evidence adduced at trial. As the Court of Appeals noted, Harris admitted that he told Jones, "I know who I had to call and what I had to do," if she called the police; furthermore, when Jones asked if Harris was threatening her, he responded, "take it how you want to." (*Id.*, Ex. 22 (Tr. 623).) This all occurred days after Harris had threatened to punch Jones's daughter in the face, Jones and her daughters had fled the home, and Jones's face remained swollen from Harris's most recent beating. (*Id.*, Ex. 19 (Tr. 156, 164-65); *id.*, Ex. 21 (Tr. 391-93).) When, in front of a gas station payphone, Jones told Harris that she was calling the police, he screamed, "don't do it, you better not fucking do it. You better not do it." (*Id.*, Ex. 19 (Tr. 164).) The jury was entitled to infer that Harris's statements, viewed against the backdrop of his repeated verbal and physical abuse, constituted witness intimidation. Harris's second ground for relief therefore lacks merit and should be denied.

/ / /

/ / /

**C.      Ground Three: Same Criminal Conduct**

In his third ground for relief, Harris argues that his right to due process was violated because the trial court improperly determined his offender score for purposes of sentencing. According to Harris, the trial court should have found that three convictions for second-degree assault that occurred on January 17, 2004, constituted the same criminal conduct. Respondent contends that Harris's argument is not cognizable on federal habeas review because it raises a state-law violation exclusively. Respondent is correct.

The Washington Court of Appeals analyzed Harris's claim regarding the "same criminal conduct" as follows:

> *Same Criminal Conduct.* Crimes committed against a single victim are the same criminal conduct for purposes of sentencing if they (a) involve the same criminal intent; (b) were committed at the same time and place; and (c) involve the same victim. RCW 9.94A.400(1)(a) [since recodified at RCW 9.94A.589(1)(a)]; *State v. Tili*, 139 Wn.2d 107, 123, 985 P.2d 365 (1999). The absence of any one of these criteria prevents a finding of same criminal conduct. *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994). A trial court's determination as to whether separate acts constitute the same criminal conduct will be reversed only for clear abuse of discretion or misapplication of the law. *State v. Haddock*, 141 Wn.2d 103, 110, 3 P.3d 733 (2000).
>
> Harris assaulted Jones three times after the Seattle concert: twice in the car, and once after Jones ran from the car in Bellingham. The trial court ruled that the two assaults inside the car (count two, in which Harris punched Jones in the nose, and count six, in which Harris hit Jones with the gun and pointed the gun at her) were the same criminal conduct because they shared the same intent: to injure and control Jones. But the court ruled that the third assault was not the same criminal conduct, because Harris' objective intent shifted to preventing Jones from reporting the earlier assaults in the car.
>
> . . . .
>
> Here . . . the first two assaults occurred as the car traveled between Seattle and Everett. The third happened in Bellingham, where Jones escaped from the car and ran almost a block away, screaming for help, before Harris caught her, grabbed her by the

> neck, choked her and dragged her into the home. The separation of time and place, and the fact that Jones was in the process of summoning help support the trial court's conclusion that Harris' intent had changed. The court did not abuse its discretion in ruling that the third assault was not the same criminal conduct for offender score purposes.

(Dkt. 14, Ex. 7 at 8-9.) Harris thus argues, without citation to authority, that the Court of Appeals violated his right to due process because it affirmed the trial court's decision to treat only two out of the three counts of assault that occurred on January 17 as the same criminal conduct in calculating his offender score.

"Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221 (1992). Violations of state law, without more, do not deprive a criminal defendant of due process. *See Newton v. Superior Court of Cal., In and For Alameda County*, 803 F.2d 1051, 1055 (9th Cir. 1986) (citing *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982)). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see Newton*, 803 F.2d at 1055 (holding that habeas relief for an asserted violation of due process is available only when the state court's action is arbitrary or fundamentally unfair).

It was neither arbitrary nor fundamentally unfair for the trial court to reject Harris's request to treat the third assault—when Harris chased after Jones and dragged her into the home—as the same criminal conduct for determining an offender score along with the two assaults that occurred inside the car. "Same criminal conduct" allows the court to impose concurrent sentences if the offenses involve the same criminal intent and victim and are committed at the same time and place. RCW 9.94A.589(1)(a). The record shows that Harris's third assault of the night took place at a

different time and place than the previous assaults, which suggests that Harris's intent changed in an attempt to stop Jones from seeking assistance. *See State v. Collicott*, 827 P.2d 263, 274-75 (Wash. 1992) (holding that the "same criminal conduct" in Washington's Sentencing Reform Act helped to supplement the merger doctrine's protection against double punishment by examining whether defendant's criminal purpose changed from one offense to another); *State v. Dunaway*, 743 P.2d 1237, 1241-42 (Wash. 1987), *supplemented by* 749 P.2d 160 (Wash. 1988) ("[I]n deciding if crimes encompassed the same criminal conduct, trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next."). Because Harris failed to show the state courts' decisions were arbitrary or fundamentally unfair, his claim that the trial court misapplied state sentencing law—in this case RCW 9.94A.589(1)(a)—is not cognizable on federal habeas review. *See Christian*, 41 F.3d at 469; *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (holding that there is no Constitutional right to merger of convictions for sentencing because the doctrine is concerned exclusively with state law); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that there is no federal habeas relief for errors of state law); *accord Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Harris's third ground for relief lacks merit and should be denied.

### D. Ground Four: Christmas Day Assault

In his fourth ground for relief, Harris argues that he was denied his rights to present a defense, to a fair trial, and to due process because the trial court "filtered [his] evidence" regarding his alibi for the Christmas Day assault. (Dkt. 6 at 44 (Memorandum 23).) The Washington Court of Appeals considered Harris's claim as one regarding the sufficiency of the evidence:

> *Sufficiency of the Evidence for Assault.* Harris argues that insufficient evidence

supported his conviction for the Christmas Day incident, because the evidence in fact supports his claim that he was in Canada at the time.

Jones testified Harris returned to the house at 11 p.m. and assaulted her. Harris points to cell phone records showing a call from Jones' house to his cell phone at 11:45 p.m. But at trial, an official from T-Mobile testified that their records use Eastern standard time. Thus, the call logged at 11:45 p.m. actually took place at 8.45 p.m. Pacific standard time, well before Harris returned home.

Harris also states that four defense witnesses, Elvira and DeAndre Zampieri, Shelly Allison and Barry Bell, testified that he did not leave Canada until December 26. But Bell did not recall seeing Harris after December 24, and the credibility of the remaining witnesses was in dispute. Allison and Elvira Zampieri are ex-girlfriends, dependent on Harris for child support, and DeAndre is Harris' 10-year-old son. Harris also argues Jones did not identify him as her assailant to the doctor she consulted, but the medical consultation took place after the New Year's Day assault when Harris punched her in the nose, not the Christmas Day choking incident.

It is for the jury to decide credibility, to resolve conflicting testimony, and to weigh the persuasiveness of the evidence. State v. Walton, 64 Wn.App. 410, 415-16, 824 P.2d 533 (1992).

(Dkt. 14, Ex. 7 at 9-10.)

Harris's fourth ground for habeas relief is meritless. First, he fails to cite any evidentiary ruling that prevented him from presenting an alibi defense for the Christmas Day assault. In fact, Harris presented his alibi his defense not only through his own testimony but also through testimony by Gary Blier, Elvira Zampieri, DeAndre Zampieri, Shelly Allison, and Barry Bell. (*Id.*, Ex. 22 (Tr. at 454-499, 518-27).) Second, it was neither contrary to nor an unreasonable application of clearly established federal law for the Washington courts to deny Harris's claim because a rational trier of fact could have weighed the conflicting evidence and concluded that Harris assaulted Jones on Christmas Day. *See Jackson*, 443 U.S. at 324. Harris's fourth ground for habeas relief should be denied.

/ / /

## III. CONCLUSION

Petitioner's habeas petition should be denied, and this action dismissed. A proposed Order of Dismissal accompanies this Report and Recommendation.

DATED this 28th day of October, 2008.

Mary Alice Theiler
United States Magistrate Judge